# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 5:21-cv-363

SCOTT P. GUTTENBERGER.,       )
                             )
      Plaintiffs,          )
                             )
      v.                    )
                             )
                             )
CHRISTOPHER ANTHONY CONRAD.,   )       **COMPLAINT**
                             )   **(JURY TRIAL DEMANDED)**
      Defendant.        )
                             )
                             )
                             )
                             )
                             )

Plaintiff Scott P. Guttenberger ("Plaintiff" or "Mr. Guttenberger"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 7, hereby submits this Complaint initiating the above-captioned matter against Defendant Christopher Anthony Conrad ("Defendant" or "Mr. Conrad"). Specifically, Plaintiff brings this action alleging certain claims for relief under North Carolina law, including: 1) libel *per se;* 2) libel *per quod*; 3) intentional infliction of emotional distress; 4) negligent infliction of emotional distress; 5) tortious interference with contractual relations; 6) violation of North Carolina's Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq*.); and 7) a claim for punitive damages under N.C. Gen. Stat. §1D-1 *et. seq.* By asserting these claims for relief under North Carolina law, Plaintiff seeks to recover all damages,

1

multipliers, penalties, attorneys' fees, and other remedies as may be available and established by law. In support of these claims, Plaintiff alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is a competent adult citizen and is a resident of the State of Florida.

2. Upon information and belief, Defendant is a competent adult citizen and a resident of Wake County, North Carolina, residing at 3905 Julie Ct., Apt 1D, Raleigh, NC 27163.

3. Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue is proper in this district as a result of 28 U.S.C. 1391(b) as Defendant resides within this judicial district and because, upon information and belief, a substantial part of the events giving rise to the claims occurred within this judicial district.

## FACTUAL BACKGROUND

*Relevant Information Regarding Plaintiff*

5. Plaintiff is a capable, knowledgeable, and talented professional that has built a career in the technology and digital marketing world. Plaintiff specializes in the areas of tech product marketing, website management, search engine optimization (SEO) strategy, email and content marketing. Plaintiff has worked in the technology and digital marketing industry for several years.

2

6.    Plaintiff's trade requires him to constantly engage in professional networking and marketing to develop and maintain relationships with clients, referral sources, and potential clients, as well as to create opportunities for his advancement in the field.

7.    The technology and digital marketing world is now extremely competitive, more competitive than it ever has been, and technology companies, e-commerce companies, and digital marketing companies have a wide array of technology professionals and those skilled in digital marketing available to select from to meet their business demands, so Plaintiff relies on his reputation and relationship with others in the industry to make a living.

8.    For example, Plaintiff has often been engaged as a speaker at various seminars and conferences for those working in technology and digital marketing. Plaintiff has also been a guest on various technology and digital marketing Podcasts.

9.    Speaking at such seminars and conferences is not only a networking tool for Plaintiff's professional development and advancement but is also a means of generating and maintaining business. So, Plaintiff relies heavily on his professional and personal reputation in the industry to ensure his professional success.

10.    Plaintiff also relies to a great extent on "word of mouth" referrals from his clients and those in the technology and digital marketing industry.

11.    Plaintiff has worked hard and expended substantial time and effort to cultivate and maintain a positive reputation and image within his industry.

12.    Plaintiff's work in developing, maintaining, and marketing his positive reputation in the technology and digital marketing world is critical not only in so far as it

opens doors for his professional advancement, but it is important for Plaintiff's ability to generate leads and referrals.

13.     Not only is Plaintiff's reputation and image important for his own professional advancement, but technology and digital marketing companies do not want to associate with and/or employ individuals that may compromise or put in jeopardy their company's reputation and image, as is true in any field.

14.     Companies in the digital marketing world, however, are particularly sensitive to the reputation of their employees, as data security and maintaining confidentiality of sensitive information is now more critical that ever.

15.     Despite the technology and digital marketing world's highly competitive environment, Plaintiff has built a successful career.

16.     Prior to the incidents underlying the present action, Plaintiff had good reason to believe that his career would steadily advance and that he would not "take steps back" in his professional development and/or career advancement.

*Defendant's Wrongful Conduct*

17.     At some point in early 2019, Plaintiff discovered that someone (now known to be the Defendant) began a campaign to defame him on the internet, primarily via the social media platform Twitter, by making false, harassing, defamatory statements that were intended and calculated to interfere with Plaintiff's employment, personal life, professional career and development, and ability to earn a living.

4

18.     Defendant's campaign to make false, harassing, defamatory statements that were intended and calculated to interfere with Plaintiff's employment, personal life, professional career and development, and ability to earn a living was successful.

19.     Defendant's conduct has caused Plaintiff to be terminated from his employment at least two times, requiring him to take a lower paying position after each termination, and has caused Plaintiff to suffer severe emotional distress in a variety of ways, which has all led to Plaintiff experiencing emotional and mental health issues, and even physical conditions.

20.     Specifically, the defamatory and harassing campaign, which was done by Defendant with the intent to cause damage to Plaintiff's personal and professional life, included the publishing of statements on the internet, particularly via Twitter, that falsely portray Plaintiff as a rapist, serial stalker, misogynist, racist, domestic abuser, and as a felon, among other things.

21.     Defendant intended to conduct his defamatory and harassing campaign anonymously, likely because Defendant knew that his published statements about Plaintiff were harassing, patently false, damaging to Plaintiff's personal and professional reputation, and would expose him to legal liability if his identity were to be known and/or made public.

22.     The substantial majority of Defendant's defamatory, harassing, patently false, and damaging statements made about Plaintiff were published by Defendant on Twitter under the username/pseudonym "Rob99424749" (the "Rob Account").

23.     As a threshold matter, Defendant's attempt to conceal his identity and the fact that he was behind the Rob Account was successful until approximately late February

2021. As such, Plaintiff was not aware of who was making the statements that portrayed him as a rapist, serial stalker, misogynist, racist, domestic abuser, and as a felon until that time.

24.     All that Plaintiff knew about the person behind the Rob Account prior to February 2021, was that it was likely someone Plaintiff knew and/or had worked with because certain details included in the various Twitter posts included information that only someone close to Plaintiff would have access to (i.e. Plaintiff's travel schedule and whereabouts).

25.     Plaintiff was only able to discover that Defendant was behind and controlling the Rob Account after a company called Socialistics, a social media marketing company, published an interview with Plaintiff on its website.

26.     The interview with Plaintiff posted on Socialistics' website included a comment section, and in response to the published interview, Defendant left a comment on September 21, 2020 at 12:38 am, under the name "Rob," stating: "Weird you feature a guy who's serial stalked numerous women for half a decade but OK. You do you….or learn to Google a guest before associating with them."

27.     Because Defendant had left a comment on Socialistics' website, Plaintiff was able to capture the IP address and computer service port associated with the person that left the comment. A service trace of the IP address revealed the internet service provider and approximate geolocation of the IP address, Raleigh, North Carolina.

28.     Thereafter, Plaintiff was able to obtain a phone number associated with the IP address and service provider and in February 2021.

6

29.     Plaintiff was able to confirm that the phone number associated with the IP address belonged to Defendant because Plaintiff and Defendant were previously co-workers at a company called TapClicks, and Plaintiff had Defendant's phone number saved in his phone. Further, Plaintiff confirmed the phone number belonged to Defendant with a mutual acquaintance, a woman that Plaintiff was engaged to at the time and was also an acquaintance of the Defendant.

30.     On February 28, 2021, Plaintiff called the phone number associated with the IP address. When Defendant answered, Plaintiff was able to further confirm it was the Defendant by the sound of his voice and Plaintiff said one word, "Rob." Immediately Defendant hung up and the call lasted exactly six seconds.

31.     Thereafter, Plaintiff attempted to call the number again on March 1, 2021, March 2, 2021, and March 3, 2021, but Defendant had either disconnected his phone number or had blocked Plaintiff's phone numbers as the calls would not connect.

32.     Additionally, after Plaintiff's phone calls to Defendant on February 28, 2021, March 1, 2021, March 2, 2021, and March 3, 2021, the Rob Account was deactivated from Twitter and was no longer accessible.

33.     As mentioned above, Plaintiff and Defendant were co-workers at TapClicks, a company providing digital marketing services until June 2020, when Plaintiff was terminated as a result of the false statements published on the internet by Defendant via the Rob Account.

34.     Upon information and belief, it was while working with Defendant at TapClicks that Defendant developed a personal vendetta against Plaintiff because of certain

events that transpired and as a result of Plaintiff's engagement to a mutual acquaintance (the woman that had confirmed Defendant's phone number).

35.    While working for TapClicks, Plaintiff's primary role was on the marketing side and Defendant primarily worked on the sales side. Naturally, the TapClicks marketing team and sales team had some overlap and collaborated on projects together.

36.    Most of the overlap between the marketing team and sales team concerned the marketing team's communication of potential customer leads to the sales team for them to follow up on the leads provided.

37.    To coordinate the efforts between the marketing team and sales team, the two teams used a software platform, Chili Piper, that helped manage email marketing, internet advertising, and targeted sales efforts based on potential leads derived by the marketing team.

38.    Chili Piper allows for its users to set certain distribution rules and parameters, which Plaintiff was responsible for determining and setting. Ultimately, the distribution rules and other parameters set by Plaintiff would direct the sales team's efforts. For instance, Plaintiff was responsible for setting the parameters for TapClicks' internet advertising spend, geolocation advertising, targeted email advertising, etc.

39.    On several occasions, without Plaintiff's knowledge, approval, or the authority to do so, Defendant accessed the Chili Piper software and reset and/or redefined the parameters and distribution rules that Plaintiff set.

40.     After Plaintiff discovered that Defendant had been resetting and/or redefining the parameters and distribution rules set in Chili Piper, Plaintiff was forced to

escalate the issue within TapClicks and had to involve the CEO and the VP of Human Resources, as Defendant's unauthorized alterations were disruptive and insubordinate.

41. Upon information and belief, Plaintiff's escalation of the issue and involving of TapClicks executives is a substantial reason, if not the sole reason, for Defendant's personal vendetta against Plaintiff that sparked his campaign to defame, harass, destroy Plaintiff's personal and professional life, and damage his ability to earn an income and advance in the industry.

42. Shortly after Plaintiff was forced to escalate the issue and involve TapClicks' executives, the Rob Account became active in April 2019, and Defendant started publishing the defamatory and patently false statements about Plaintiff which are set forth in detail below.

43. When the Rob Account became active in April 2019, the "introduction" or "bio" line stated: "Exposing the truth of a serial stalker, who claims to be the victim of the woman he abused." *See* the Rob Account bio information, attached hereto as **Exhibit 1**. Upon information and belief, by all reason, the Rob Account "bio" referred to Plaintiff.

44. As soon as the Rob Account became active, the defamatory, harassing, patently false, and damaging publications Defendant made about Plaintiff via the Rob Account continued consistently through February 2021, and include:

- On April 10, 2019, the Rob Account published: "What do @SkotTheMarketer @TapClicks @AbuseinV @DeaneTwins @SalyersTwins and @crime_twin have in common….hmmm #felony #DomesticAbuse #MeToo #fbi #FBI";

9

- On April 14, 2019, the Rob Account published: "Move on Scott G, your ex is scared because of your tempter and acts of violence. Stop using proxies to violate court Orders #TimesUp";

- On April 13, 2019, the Rob Account published: "Funny how Scott G claims to be a victim of abuse then mocks a rape victim for "not reporting";

- On April 14, 2019, the Rob Account published: "What a loser @skotthemarketer is…. Won't let go of his ex, continues to stalk and abuse, then mocks those who try to show him how childish he is…. I can't imagine employing his criminal ass…@tapclicks should take notice";

- On April 23, 2019, the Rob Account published: "Take notice @tapclicks … You hired a criminal";

- On April 24, 2019, the Rob Account published: "The FBI visited this man because he posed a threat. They didn't visit him to listen to his side. They were documenting the actions of an abuser ….. @skotthemarketer stop harassing your victims";

- On May 6, 2019, the Rob Account published: "Like clockwork…the man running @abuseinv,@crime_twin @skotthemarketer and every part of this madness returns all at the same time. Geotags are tied to all tweets you asshat. Stop #domesticviolence. Stop #stalking your ex!";

- On June 26, 2019, the Rob Account published: "Imaging being so foolish as to engage in a relationship with a man who stalks his ex and has even been investigated by federal police! A stain on any who associate with him hiding behind blogs and shell accounts. The truth will come out @skotthemarketer @tapclicks @tapanalytics";

- On July 5, 2019, the Rob Account published: "@NinjaCatPPC and @tapanalytics made the mistake of hiring a stalker in the #metoo era. Shame they didn't just ask @skotthemarketer why he wont move on with his life instead of committing #libel #TimesUp #domesticabuse";

- On July 25, 2019, the Rob Account published: "If only they would pass this in #Hawaii …. @skotthemarketer refuses to stop stalking his married ex ….no wonder he hates #WomensRights #WomensRightsAreHumanRights #TimesUp #metoo #DigitalMarketing #stopcyberstalking";

- On August 7, 2019, the Rob Account published: Which is sad as its so obvious he's behind a continued campaign of terror and #misogyny";

- On August 26, 2019, the Rob Account published: "When you meet #stalker and #felon @skotthemarketer what does he tell you about first? #veganism or his ex who he refuses to stop #cyberstalking!";

- On August 31, 2019, the Rob Account published: "Imagine hiring a #cyberstalking #narcissist @Skotthemarketer @tapclicks @NicnjaCatPPC @boathousecapital";

- On August 31, 2019, the Rob Account published: "Especially when you abuser uses his employer to shield his stalking @skotthemarketer @tapclicks @NinjaCatPPC @BoathouseCap";

- On October 7, 2019, the Rob Account published: "Funny how @skotthemarketer went dark on his libel and slander the more this case heats up. #DigitalMarketing world take notice of this nutjob. @tapclicks @RavenTools @NinjaCatPPC";

- On October 13, 2019, the Rob Account published: "@skotthemarketer is a stalker and slanderer";

- On October 27, 2019, the Rob Account published: "And now he's back seeking another woman in the same place….I wonder why the last one left….must have been another woman abusing poor Scott";

- On October 27, 2019, the Rob Account published: "@tapclicks @luminacomms @RavenTools @BoathouseCap why do you continue to allow @skotthemarketer to #abuse and #harass a woman while lying about where he is?";

- On October 30, 2019, the Rob Account published: "reminding everyone this creed still stalks his ex gf then claims to be a victim";

- On February 13, 2020, the Rob Account published: "A failed marketer sneaks around in Colombia with off limits ladies and refuses to believe others know all about it and suddenly he is an expert on a second language.";

- On March 10, 2020, the Rob Account published: "Block me, protect you account, stalk your new exs….the truth always comes out @skotthemarketer….and I know much more than you think. Delete you

"insurance" files. They'll only incriminate you @tapclicks @RavenTools @Lumina Comms @SanJosePD";

- On March 14, 2020, the Rob Account published: "Bring back your "team's" accounts. @tapclicks would appreciate not being associated with your #misogyny and inability to #LearnEnglish";

- On December 30, 2020, the Rob Account published: "OK rapist bro. Post a shirtless video about this thread. You won't.".

- The Rob Account published: "What's even more hilarious is claiming to be a girl in her 20s… Crazy how desperate Scott G is to cyberstalk his ex after she's married.";

- The Rob Account published: "Yawn, can't wait for Scott G to move on and stop hijacking victim's hashtags for his own sick mission. Abuser claims to be abused…. Peak sickness @AbuseinV and @skotthemarketer both used to harass a rape victim….shame";

- The Rob Account published: "@crime_twin and his many accounts continues to violate the order of protection against the @DeaneTwins and @SalyersTwins … Incredible how he is trsted to work in marketing with a major company. #Stalker #domesticsbuser Scott Guttenberger…ask his employer why they support this!";

- The Rob Account published: "As the man who claims to a) Not be a stalker/felon and b) owner of the proxy accounts goes silent each time he leaves the country, is it any wonder why the evidence always points to him? His ex moved on, why can't he? #timesup #believeallwomen #enddomesticviolence";

- The Rob Account published: "The actions of a man who's moved on with his life…continuing to harass an abuse victim via his sock accounts to all 4 followers @skotthemarketer @tapclicks @twincrime @tapanalytics";

- The Rob Account published: "@SkotTheMarketer your ex and her family won't have you stalking follow them. Your sorry shell accounts will be followed more than your joke of a conspiracy #pepesilva #DigitalMarketing #liar #metoo #domestic abuse #timesup";

- The Rob Account published: "You can't hide your past @skotthemarketer";

- The Rob Account published: "He's not a Colombian. He's a carpet bagger gringo He's a serial stalker and he's a shitty marketer";

- The Rob Account published: "Tweets that won't age well. Cyberstalker, lawsuit dodger, and black face fanatic. What an employee to have on staff….and future public servant….my sides #racist #misogyny #MeToo #TimesUp @Skotthemarketer @tapclicks @LuminaComms #loac";

- The Rob Account published: "Doxing private citizens…recording and editing conversations….cyberstalking his married exgf….hiding from lawsuits like a coward…also your trusted "privacy expert" @skotthemarketer #metoo #timesup #believewomen #WhitePrivilege";

- The Rob Account published: "@akotthemarketer is not a good person. He's not a hero…rather a scumbag who avoids justice.";

- The Rob Account published: "Countdown to @skotthemarketer virtue signaling while continuing to cyberstalk his ex gfs.";

- The Rob Account published: "I wonder why @skotthemarketer always has troubles with women…especially those who support #metoo #cyberstalking";

- The Rob Account published: "Im shocked by the irony… imagine working or hiring a serial stalker and rapist. #Epstein and @skotthemarketer would be on the same ring of hell…#timesup #MeToo #EqualityCantWait #believewomen #blueliesmatter #narcissitic abuse @tapclicks @Boathousecap @NinjaCatPPC";

- The Rob Account published: "Sad that @tapclicks @tapanalytics @RavenTools @BoathouseCap haven't caught onto @skotthemarketers hidden crimes. #metoo #TimesUpPayUp #stalker #domesticabuse #DigitalMarketing";

- The Rob Account published: "@TapClicks why didn't you take a stand on this? Hiring a serial stalker…..#shameful";

- The Rob Account published: "Hilarious that this #victim cries on @youtube videos then represents his company in a #libel campaign… I hope he realizes that its legal to fire an employee who damages their brand like @tapclicks and @NinjaCatPPC by committing #rape then #cyberstalking while representing them";

- The Rob Account published: "@LuminaComms hilarious you haven't picked up on the #misogyninst @skotthemarketer is. I'm sure your #womxn staff felt something weird with him @darylmcnutt";

- The Rob Account published: "Why can't he post on Twitter like he used to? @AgencyAnalytics would love to hear about his saga like his last two employers did. May he can run away from another horrible woman….or he could admit he's a creep";

- The Rob Account published: "@agencyanalytics and @tapclicks and @NinjaCatPPC must really appreciate you associating them with violations of #dataprivacy #cyberstalking";

- The Rob Account published: "Literally the pot calling the kettle. Vegan rapist bro who stalks any girl smart enough to reject him.";

- The Rob Account published: "Continuing the pattern of narcissism, abuse and violations of protective orders… sad";

See the various Twitter posts, attached hereto as **Exhibit 2**.

45. Of importance is the fact that many of Defendant's false, defamatory, and harassing statements on Twitter included "tags" to Plaintiff's employers, companies investing in Plaintiff's employer, and/or clients that maintain Twitter accounts. *See* Exhibit 2. Specifically, Defendant tagged TapClicks, Boathouse Capital (a TapClicks investor), Agency Analytics, and Ninja Cat. *See* Exhibit 2.

46. Tagging a particular Twitter account directly links the post to the tagged profile and notifies that user of the post including their tag.

47. For example, when Defendant posted, "Im shocked by the irony… imagine working or hiring a serial stalker and rapist. #Epstein and @skotthemarketer would be on the same ring of hell…#timesup #MeToo #EqualityCantWait #believewomen #blueliesmatter #narcissitic abuse @tapclicks @Boathousecap @NinjaCatPPC", the tag

@TapClicks would directly link to the TapClicks Twitter profile and would notify that account of the tagged post.

48.     Additionally, Defendant used various "hashtags" in the above-referenced Twitter publications, including but not limited to:

- #rape
- #DigitalMarketing
- #DomesticAbuse
- #MeToo
- #fbi
- #stalking
- #stopcyberstalking
- #cyberstalking
- #racist
- #misogyny

49.     Hashtags, denominated by the "#" symbol allow Twitter users to search for and view all posts that include a particular hashtag.

50.     For example, a Twitter user could perform a search on the platform by the hashtag "#rape", and all Twitter posts including that hashtag would be returned as search results.

51.     Therefore, not only did Defendant directly tag Plaintiff's employers, companies investing in Plaintiff's employer, and Plaintiff's clients with his false public postings about Plaintiff, but he allowed for *anyone* to search for his posts by including hashtags.

52.     Defendant's false statements published on Twitter could be viewed by anyone, not just Twitter account holders. People without Twitter accounts are still able to view profiles that are not private and search for posts by hashtags.

*Damage to Plaintiff*

53.     As a direct and proximate result of Defendant's defamatory, false, and damaging statements made via the Rob Account, Plaintiff's employment with TapClicks was terminated in June 2020.

54.     Upon information and belief, TapClicks terminated Plaintiff's employment because continuing to employ him, considering Defendant's false publications, reflected poorly on the company and TapClicks did not want to be associated with someone that has such disturbing allegations made against them.

55.     Specifically, one day in June 2020, Plaintiff was informed that he needed to be on a phone call with the TapClicks CEO and representatives from the human resources department. During this call, Plaintiff was informed that his employment with TapClicks was being terminated because of the allegations made against him by the Rob Account.

56.     Upon information and belief, Defendant intended to publish defamatory, false, and damaging statements about Plaintiff to interfere with his employment with TapClicks and disrupt his professional career and development, which was successful.

57.     Plaintiff's annual compensation with TapClicks when he was terminated was approximately $170,000.

58.     After Plaintiff was terminated from TapClicks, Plaintiff began working for a digital marketing company based in Canada, Agency Analytics, in July 2020.

59. Plaintiff worked for Agency Analytics until his employment was terminated in November 2020.

60. Plaintiff's termination from Agency Analytics in November 2020 was the direct and proximate result of Defendant's defamatory, false, and damaging statements made via the Rob Account. Plaintiff was again told by Agency Analytics that he was being terminated from his employment as a result of the Rob Account Twitter posts.

61. Plaintiff's annual compensation with Agency Analytics when he was terminated in November 2020, was approximately $170,000.

62. Upon information and belief, Defendant intended to publish defamatory, false, and damaging statements about Plaintiff to interfere with his employment with Agency Analytics and disrupt his professional career and development, which was successful.

63. When Plaintiff was terminated from his employment with Agency Analytics, Plaintiff was residing in Hawaii and renting an apartment for approximately $2,000 a month. As a direct and proximate result of his termination from Agency Analytics and no longer having income from employment, Plaintiff could no longer afford to rent the apartment and had to relocate to live with family.

64. After Plaintiff was terminated from Agency Analytics in November 2020, Plaintiff diligently searched for a new, comparable position within the technology and digital marketing industry, but was not able to secure employment until June 2021.

65. In June 2021, Plaintiff secured employment in the technology and digital marketing world yet was forced to accept a position that pays substantially less than what

he was making with TapClicks and Agency Analytics as a result of the Rob Account Twitter posts and a seven (7) month gap on his resume.

66.     The position Plaintiff secured in June 2021, is compensated at approximately $100,000 annually.

67.     As a direct and proximate result of Defendant's efforts to defame Plaintiff, interfere with his professional and personal life, Plaintiff's career, personal life, and earning potential have suffered substantially.

68.     In addition to the harm to his occupational reputation, earning potential, and overall career, Defendant's defamatory and false allegations have caused Plaintiff to suffer severe emotional and mental health issues. Plaintiff suffers from an extreme amount of personal embarrassment, anxiety, fear, and harm with respect to his personal reputation as someone who treats women (and all persons) with respect, and as someone who does not engage in physical violence or sexual assault.

69.     Plaintiff describes spending greats sums of his time anxiously worrying about who has seen Defendant's Twitter posts, through which he claims that Plaintiff is a domestic abuser, rapist, misogynist, racist, serial stalker, and felon.

70.     Plaintiff is unsure how to address the allegations made in Defendant's Twitter posts with his friends, family, members, and acquaintances; and the prospect of doing so, or failing to do so, fills Plaintiff with a great amount of stress and anxiety daily.

71.     Additionally, Plaintiff's emotional and mental health has been damaged so severely that he has had to see physicians and has been prescribed anti-depressants to help him cope with the depression, stress, and anxiety he feels daily.

72. Moreover, the damage to Plaintiff's emotional and mental health has been so severe that it has impacted his physical well-being, as Plaintiff has had to seek treatment from physicians to perform certain bodily functions that were not an issue before Defendant engaged in his campaign to defame, harass, and destroy Plaintiff's personal and professional life.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF

### *Defamation – Libel Per Se*

73. The previous paragraphs and exhibits attached hereto are realleged and incorporated by reference.

74. Defendant wrote and/or caused to be published the false statements referenced herein about Plaintiff.

75. Defendant published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Plaintiff, and such persons understood Defendant's statements.

76. Defendant's statements about Plaintiff were false.

77. Defendant's statements are libelous on their face, in that they allege that Plaintiff has committed infamous and immoral crimes of moral turpitude.

78. Defendant's statements are facially defamatory in that they allege that Plaintiff has raped women, is a racist, serial stalker, domestic abuser, misogynist, felon, and tend to hold Plaintiff up to disgrace, ridicule or contempt as set forth herein.

79. Defendant's statements are facially defamatory in that they tend to prejudice or impeach Plaintiff in his trade, profession, occupation, or means of livelihood.

80.     Defendant's statements are further facially defamatory in that they tended to prejudice or impeach Plaintiff 's reputation.

81.     No innuendo, colloquium, explanation or extrinsic facts are required to understand Defendant's statements which, when considered alone, allege that Plaintiff committed the crime of rape, is a racist, serial stalker, domestic abuser, misogynist, and felon.

82.     Plaintiff is a private figure.

83.     The subject matter of Defendant's libelous statements is not a matter of public concern.

84.     Defendant's statements were not made on a privileged occasion.

85.     Defendant's statements were made recently enough so as to not fall outside of the North Carolina's Statute of Limitations, making this Complaint timely.

86.     When Defendant made these statements about Plaintiff, Defendant knew they were false and made them with malice.

87.     Plaintiff has been damaged as a proximate result of Defendant's defamatory conduct in an amount in excess of $75,000 (twenty-five thousand dollars) to be proven at trial.

88.     Plaintiff has suffered actual, special, pecuniary damages as a proximate result of Defendant's libel.

89.     Defendant's allegations regarding Plaintiff constitute libel *per se* and are of such nature that they had the immediate tendency to impair Plaintiff's reputation, to impeach Plaintiff in his trade, occupation, profession, or means of livelihood, and that they

hold Plaintiff up to disgrace, contempt, or ridicule. Therefore, Plaintiff is entitled to a conclusive presumption of damage to his reputation and character and of malice on the part of Defendant.

## **PLAINTIFF'S SECOND CLAIM FOR RELIEF**

### *Defamation – Libel Per Quod*

90.     The previous paragraphs are realleged and incorporated by reference.

91.     Defendant wrote and/or caused to be published the false statements referenced herein about Plaintiff.

92.     Defendant published the referenced statements by knowingly communicating and/or causing them to be distributed so that they reached one or more persons other than Plaintiff.

93.     Defendant's statements about Plaintiff were false and Defendant knew or should have known that they were false were it not for Defendant's intentional and/or reckless disregard for the truth.

94.     Defendant's statements about Plaintiff are not matters of public concern and Plaintiff is a private figure.

95.     To the extent that Defendant's statements about Plaintiff are not defamatory on their face, or are subject to multiple interpretations, those statements become defamatory when they are considered in connection with innuendo, colloquium, and explanatory circumstances as alleged throughout this Complaint.

96.     Defendant's defamatory conduct was the actual and proximate cause of harm to Plaintiff.

97.     Defendant acted with actual malice toward Plaintiff in publishing the false statements. Therefore, Plaintiff is entitled to an award of punitive damages.

98.     Plaintiff suffered special damages including pecuniary loss as a proximate result of Defendant's defamatory statements, in an amount to be shown and proven at trial.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF

### *Intentional Infliction of Emotional Distress*

99.     The previous paragraphs are realleged and incorporated by reference.

100.    Defendant's conduct as set forth herein has been extreme and outrageous, going beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community.

101.    Defendant's conduct was further intended to cause and has caused Plaintiff severe emotional distress.

102.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered from depression, anxiety and fear such that no reasonable person could be expected to continually endure Defendant's continued harassment, false and defamatory statements, and intentional damage to Plaintiff's personal and professional life.

103.    As a direct and proximate result of Defendant's conduct, Plaintiff has been forced to incur substantial, actual expenses such as medical bills, treatment, and mental health counseling.

104.    Defendant's wrongful conduct proximately caused actual, pecuniary damage to Plaintiff in an amount in excess of $75,000.00; such amount to be shown and proven at trial.

105. In addition, as Defendant's conduct in this matter has been both wanton and malicious, Plaintiff should further be entitled to an award of punitive damages against Defendant.

## PLAINTIFF'S FOURTH CLAIM FOR RELIEF

### *Negligent Infliction of Emotional Distress*

106. The previous paragraphs are realleged and incorporated by reference.

107. Defendant's conduct as set forth herein has been extreme and outrageous, going beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community.

108. Defendants' negligent conduct has directly and proximately caused Plaintiff severe emotional distress.

109. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered from depression, anxiety and fear such that no reasonable person could be expected to continually endure Defendant's continued harassment, false, and defamatory statements, and intentional damage to Plaintiff's personal and professional life.

110. As a direct and proximate result of Defendant's conduct, Plaintiff has been forced to incur substantial, actual expenses such as medical bills, treatment, and mental health counseling.

111. Defendant's wrongful conduct proximately caused actual, pecuniary damage to Plaintiff in an amount in excess of $75,000.00; such amount to be shown and proven at trial.

112.    In addition, as Defendant's conduct in this matter has been both wanton and malicious, Plaintiff should further be entitled to an award of punitive damages against Defendant.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF

### *Tortious Interference with Contractual Relations*

113.    The previous paragraphs are realleged and incorporated by reference.

114.    Plaintiff was an employee of TapClicks and Agency Analytics when Defendant engaged in the wrongful conduct described herein.

115.    Defendant was not a party to the employment relationship Plaintiff had with either TapClicks and/or Agency Analytics.

116.    Defendant knew of Plaintiff's employment relationships with TapClicks and Agency Analytics and knew and intended for his conduct to interfere with Plaintiff's employment.

117.    Defendant intentionally caused TapClicks and Agency Analytics to terminate their employment relationships with Plaintiff.

118.    Defendant intentionally interfered with Plaintiff's ability to maintain employment with both TapClicks and Agency Analytics.

119.    Defendant's actions were without any legal justification or privilege.

120.    Defendant acted with malice.

121.    Defendant's actions were harmful to Plaintiff and were without legal justification.

122. Defendant's motives in interfering with Plaintiff's employment were not reasonably related to the protection of any business interest of Defendant.

123. Defendant's wrongful conduct has proximately caused Plaintiff monetary loss in the form of lost revenue, lost earning potential, and lost career advancement in an amount to be shown and proven at trial.

124. Defendant's wrongful conduct proximately caused actual, pecuniary damage to Plaintiff in an amount in excess of $75,000.00; such amount to be shown and proven at trial.

## PLAINTIFF'S SIXTH CLAIM FOR RELIEF

### *Violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1 et. seq.*

125. The previous paragraphs are realleged and incorporated by reference.

126. Defendant's conduct constitutes unfair and/or deceptive acts in that they had a capacity or tendency to deceive.

127. Defendant's unfair and/or deceptive conduct and publications were relied upon by TapClicks and Agency Analytics and had the capacity or tendency to deceive them.

128. Defendant's false statements were unfair and/or deceptive in that the effect on an average consumer hearing such statements would be to believe that their employee had committed rape, is a serial stalker, racist, domestic abuser, criminal, misogynist, and was unfit for employment.

129.     Defendant's conduct was unfair and/or deceptive in that it was libelous per se and defamatory.

130.     Defendant's conduct constituted unfair and/or deceptive trade practices in that Defendant caused made, published, or circulated statements, assertions or representations which were untrue, misleading, or deceptive to TapClicks and/or Agency Analytics, who are in the business of digital marketing, about Plaintiff in the conduct of his employment.

131.     Defendant's conduct constitute unfair and/or deceptive trade practices in that Defendant made, published, disseminated, or circulated, publications which are false and said publications were calculated to injure Plaintiff, a person engaged in the business of digital marketing.

132.     Defendant committed unfair and/or deceptive acts by intentionally interfering with Plaintiff's employment with TapClicks and/or Agency Analytics and intentionally inducing them to terminate Plaintiff's employment.

133.     Defendant's unfair or deceptive acts were in or affecting commerce.

134.     Defendant's conduct occurred within the time prescribed by North Carolina's Statutes of Limitations, and Plaintiff's Complaint is therefore timely.

135.     Defendant's unfair and/or deceptive acts have proximately caused Plaintiff financial harm in the form of lost revenue, earnings, and career advancement.

136.     Defendant's unfair and/or deceptive acts proximately caused actual harm to Plaintiff in an amount in excess of $75,000.00; such amount to be shown and proven at trial.

137.   Defendant's conduct entitles Plaintiff to trebled damages and attorney's fees.

## PLAINTIFF'S SEVENTH CLAIM FOR RELIEF

*Plaintiff's Claim for Punitive Damages Against Defendant Pursuant to N.C. Gen. Stat.*

*§1D-1 et. seq.*

138.   The previous paragraphs are realleged and incorporated by reference.

139.   Defendant's wrongful conduct was the proximate and actual cause of compensatory damages suffered by Plaintiff.

140.   Fraud, malice, willful or wanton conduct was present in Defendant's conduct, and was related to the compensatory damages suffered by Plaintiff.

141.   Defendant's conduct involved the conscious, intentional disregard of and indifference to the rights and safety of Plaintiff.

142.   Defendant's conduct was motivated by a sense of personal ill will toward Plaintiff which activated or incited Defendant which resulted in harm to Plaintiff.

143.   Defendant's conduct was egregious.

144.   Defendant's conduct was not vicarious or performed on behalf of another.

145.   Defendant's conduct and motives were reprehensible, in that they were to cause harm to Plaintiff in his personal and professional life.

146.   Defendant's wrongful conduct has caused injury to Plaintiff that posed a risk of serious harm in that it put Plaintiff at risk of wrongful incarceration for crimes he did not commit and caused Plaintiff to lose his employment and means to earn a livelihood.

147.   Defendant was aware of the probable consequences of his wrongful conduct.

148.    Defendant knew or should have known that his wrongful conduct was reasonably likely to result in harm, injury, or damage to Plaintiff. In fact, Plaintiff engaged in such conduct with the intention of causing such results.

149.    Plaintiff suffered actual damages as a proximate result of Defendant's conduct.

150.    Defendant's conduct was not a one-time instance, it was a continued and sustained campaign to defame Plaintiff and cause harm to his personal and professional life.

151.    Upon information and belief, Defendant is able to pay punitive damages.

152.    Punitive damages are likely to deter Defendant and others from committing similar wrongful acts.

153.    Plaintiff's claim for punitive damages incurred as a result of Defendant's conduct is in excess of $75,000.00; such amount to be shown and proven at trial.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court as follows:

1.  Order Defendant to pay Plaintiff's all actual, presumed, punitive and other damages legally available to Plaintiff as a result of Defendant's false, defamatory statements, intentional and/or negligent infliction of emotional distress, tortious interference with contractual relations, and unfair or deceptive trade practices;

2.  Order that Defendant pay special and punitive damages to Plaintiff;

3.  Order that Plaintiff's costs and reasonable attorney's fees associated with this action be taxed against Defendant;

4.  Order that any damages award against Defendant and in favor of Plaintiff be trebled;

5. That should this matter be tried, that trial be before an impaneled jury;

6. Grant such further and other relief as this Honorable Court deems just and proper.

Respectfully submitted,

This the <u>10th</u> Day of <u>September</u> 2021.

**s/ Gregory D. Whitaker**
Gregory D. Whitaker
N.C. Bar 51065
Attorney for Plaintiff
Parton Law PLLC
122 North McDowell Street
Charlotte, North Carolina 28204
Telephone: (704) 376-4488
Fax (704) 731-0904
Email: GWhitaker@PartonNC.com

## CERTIFICATE OF SERVICE

The Undersigned Counsel certifies the foregoing **PLAINTIFF'S COMPLAINT** has been filed with the United States Court for the Eastern District of North Carolina, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consent to accept service by electronic means.

**s/ Gregory D. Whitaker**
Gregory D. Whitaker
N.C. Bar 51065
Attorney for Plaintiff
Parton Law PLLC
122 North McDowell Street
Charlotte, North Carolina 28204
Telephone: (704) 376-4488
Fax (704) 731-0904
Email: GWhitaker@PartonNC.com

# EXHIBIT 1



6:50

LTE

🔒 mobile.twitter.com

**ROADBL0CK**
@roadbl0

Followers you know    Followers    **Following**

**Rob**
@Rob99424749                    **Blocked**

Exposing the truth of a serial stalker, who claims to
be the victim of the woman he abused.

# EXHIBIT 2



2:03

LTE

🔒 mobile.twitter.com ↻

← **Rob1987**
4 Tweets

⋮ ◯ Follow

**Rob1987**
@Rob19874

📅 Joined April 2019

**0** Following  **0** Followers

Not followed by anyone you're following

Tweets   Tweets & replies   Media   Likes

**Rob1987** @Rob19874 · 53m ⌄
Continuing the pattern of narcissism, abuse and
violations of protective orders... sad

@SkotTheMarketer @DeaneTwins #twinsfest
#domesticabuse #felony #Virginia

**AbuseinVirginia** @AbuseinV · 1h

#twinsdaysfestival #ourtwinsanewedding
#domesticabuse #narcissisticabuse #felony
#TLC #twinsdays #CorruptandDangerous

m.youtube.com/watch?v=GYHHyG...

💬   ⟲   ♡   ⬆

<   ⬆   📖   🗐



**Rob**
240 Tweets

Blocked

twitter.com/Rob99424749/st...

**Rob** @Rob99424749 · Apr 10, 2019
What do @SkotTheMarketer @TapClicks @AbuseinV @DeaneTwins @SaiyersTwins and @crime_twin have in common....hmmm #felony #DomesticAbuse #MeToo 💃 #fbi @FBI

1          1



**Rob**
@Rob99424749                                              ⌄

Move on Scott G, your ex is scared because
of your temper and acts of violence. Stop
using proxies to violate court Orders
#TimesUp 

10:47 AM · Apr 14, 2019 · Twitter Web App

◯     ⟲     ♡     ⬆

← **Thread**

 **Rob**
@Rob99424749                    ∨

Funny how Scott G claims to be a victim of abuse then mocks a rape victim for "not reporting "...#domesticviolence is real #BelieveSurvivors #BelieveWomen #TimesUp

10:28 PM · Apr 13, 2019 · Twitter Web App



 **Rob**
@Rob99424749

Replying to @Rob99424749 @AbuseinV and 2 others

Take notice @tapclicks ... You hired a criminal

8:14 AM · Apr 23, 2019 · Twitter Web App

          ♡     



**Rob** @Rob99424749 · May 3                          ⌄

Funny that all the proxy accounts run by this man go
dark all of the sudden. It's as if this innocent man
and the accounts are the same person...

> 👤 **Rob** @Rob99424749 · Apr 23
>
> The FBI visited this man because he posted a
> threat. They didn't visit him to listen to his side.
> they were documenting the actions of an ...
>
> Show this thread

**Rob** @Rob99424749 · May 6

Like clockwork...the man running
@abuseinv,@crime_twin @skotthemarketer and
every part of this madness returns all at the same
time. Geotags are tied to all tweets you asshat.
Stop #domesticviolence . Stop #stalking your ex!
#TimesUp⚖️ twitter.com/Rob99424749/st...



Rob
240 Tweets

Blocked

twitter.com/Rob99424749/st...

This Tweet is unavailable.

💬          ⟲ 1          ♡ 2          ⬆

Rob @Rob99424749 · Jun 26, 2019
Imagine being so foolish as to engage in a relationship with a man who stalks
his ex and has even been investigated by federal police! A stain on any who
associate with him Hiding behind blogs and shell accounts. The truth will come
out @skotthemarketer @tapclicks @tapanalytics
twitter.com/Rob99424749/st...

This Tweet is unavailable.

**Rob** @Rob99424749 · Jul 5, 2019

@NinjaCatPPC and @tapanalytics made the mistake of hiring a stalker in the #metoo 🕺 era. Shame they didn't just ask @skotthemarketer why he won't move on with his life instead of committing #libel #TimesUp #domesticabuse twitter.com/Rob99424749/st...

💬          🔁 1          ♡ 2          ↑



**Rob**
240 Tweets

**Blocked**

**Rob** @Rob99424749 · Jul 25, 2019
If only they would pass this in #Hawaii .... @skottthemarketer refuses to stop stalking his married ex....no wonder he hates #WomensRights #WomensRightsAreHumanRights #TimesUp #metoo 💁 #DigitalMarketing #stopcyberstalking



Rob
240 Tweets

Blocked

Rob @Rob99424749 · Aug 7, 2019
Which is sad as it's so obvious he's behind a continued campaign of terror and
#misogyny #TimesUp #metoomarketing #virginia #hawaii #digitaldealer2019

Tweets     Tweets & replies     Media     Likes

⇄ Twin Crime Retweeted
AbuseinVA @AbuseinVa · 5d
The Salyers Twins

#twinsdaysfestival #twinsburg
#JusticeIsComing #northcarolina
#virginia #crime #domesticviolence
#domesticabuse #jail #felony #arrest

Show this thread

Rob @Rob99424749 · Aug 7, 2019



**Rob**
@Rob99424749

When you meet #stalker and #felon @skotthemarketer what does he tell you about first? #veganism or his ex who he refuses to stop #cyberstalking ! #EqualityCantWait 🎤 #TimesUp #metoo 🤚🏻 @tapclicks @NinjaCatPPC #DigitalMarketing



2:28 PM · Aug 26, 2019 · Twitter Web App



**1** Retweet   **1** Like

 **Rob** @Rob99424749 · 2h

Imagine hiring a #cyberstalking #narcissist @skotthemarketer @tapclicks @NinjaCatPPC @boathousecapital

 **The Narcissist Apocalypse Pod...** · Aug 30

This drawing we made may hit too close to home for many. So BIG HUGS. Also, if you haven't listened to our narcissist abuse survivor story podcast, you should! You'll feel less alone. narcissistapocalypse.com

#domesticabuse #mentalabuse #narcissisticabuse #traumabonding #CPTSD





**Rob** @Rob99424749 · 2h

Replying to @NarcApocalypse

Especially when your abuser uses his employer to shield his stalking @skotthemarketer @tapclicks @NinjaCatPPC @BoathouseCap

 **Rob**
@Rob99424749                                    ⌄

Funny how@skotthemarketer went dark on his libel and slander the more this case heats up. #DigitalMarketing world take notice of this nutjob. @tapclicks @RavenTools @NinjaCatPPC



**Rob**
@Rob99424749

Replying to @Rob99424749 @TapClicks and 2 others

@skotthemarketer is a stalker and slanderer #timesup #BelieveWomen #MeToo 

3:54 PM · Oct 7, 2019 · Twitter Web App

**1** Retweet   **1** Like



Rob
240 Tweets

Rob @Rob99424749 · Oct 27, 2019
And now he's back seeking another woman in the same place....I wonder why the last one left....must have been another woman abusing poor Scott
#onward19 #metoo 🙄 #mamas twitter.com/Rob99424749/st...

This Tweet is unavailable.

Blocked



**Rob**
@Rob99424749

@tapclicks @LuminaComms @RavenTools @BoathouseCap why do you continue to allow @skotthemarketer to #abuse and #harrass a woman while lying about where he is? 🇨🇴🇨🇴🇨🇴🤡🤡🤡🤔🤔🤔 #metoo ✋🏻 #yext #DigitalMarketing @Hanapin

12:02 AM · Oct 27, 2019 · Twitter Web App

**Rob**
@Rob99424749

Replying to @Rob99424749 @SkotTheMarketer and 5 others

Reminding everyone this creep still stalks his ex gf then claims to be a victim

10:12 AM · Oct 30, 2019 · Twitter Web App

← **Tweet**

 **Rob**
@Rob99424749                                    ⌄

A failed marketer sneaks around in Colombia with off
limits ladies and refuses to believe others know all
about it suddenly he is an expert on a second
language. Maybe he should show up to court and not
tarnish his employer...@tapclicks #digitalmarketing
#metoo 🖐🏻 #TimesUp #SanJose



**Rob**
@Rob99424749

Block me, protect your account, stalk your new exs.....the truth always comes out @skotthemarketer....and I know much more than you think. Delete your "insurance" files. They'll only incriminate you

@tapclicks @RavenTools @LuminaComms @SanJosePD

1:12 AM · Mar 10, 2020 · Twitter Web App

Bring back your "team's" accounts. @tapclicks would appreciate not being associated with your #misogyny and inability to #LearnEnglish

1:27 AM · Mar 14, 2020 · Twitter Web App

← **Thread**

This Tweet is unavailable.

6:49 PM · Apr 12, 2019 · Twitter Web App

**Rob** @Rob99424749 · 7h ⌄

Replying to @Rob99424749 @crime_twin and 2 others

What's even more hilarious is claiming to be a girl in her 20s.... Crazy how desperate Scott G is to cyberstalk his ex after she's married.

💬 1        ⟲ 1



**Rob** @Rob99424749 · 3h

Yawn, can't wait for Scott G to move on and stop hijacking victim's hashtags for his own sick mission. Abuser calims to be abused.... peak sickness @AbuseinV and @skotthemarketer both used to harrass a rape victim.....shame

Show this thread

Show this thread



Blocked

## Rob
@Rob99424749

Tweets | **Tweets & replies** | Media | Likes



**Rob** @Rob99424749 · 15h ⌄

@crime_twin and his many accounts continues to violate the order of protection against the @DeaneTwins and @SalyersTwins ... Incredible how he is trsted to work in marketing with a major company. #STALKER #domesticabuser Scott Guttenburger..ask his employer why they support this! twitter.com/Rob99424749/st...

This Tweet is unavailable.



**Rob** @Rob99424749 · 22m

The actions of a man who's moved on with his life....continuing to harrass an abuse victim via his sock accounts to all 4 followers @skotthemarketer @tapclicks @twincrime @tapanalytics #TimesUp



**Rob** @Rob99424749 · 2h

@SkotTheMarketer your ex and her family won't have your stalking follow them. Your sorry shell accounts will be followed more than your joke of a conspiracy #pepesilva #DigitalMarketing #liar #metoo 💃 #domesticabuse #timesup





**Rob** @Rob99424749 · 1h ⌄

Tweets that won't age well. Cyberstalker, lawsuit dodger, and black face fanatic. What an employee to have on staff....and future public servant...my sides

#racist #misogyny #MeToo 💃 #TimesUp @skotthemarketer @tapclicks @LuminaComms #loac



**Rob** @Rob99424749 · 19m

Doxing private citizens...recording and editing conversations....cyberstalking his married exgf....hiding from lawsuits like a coward...also your trusted "privacy expert" @skotthemarketer #metoo #timesup #believewomen #WhitePrivilege





**Rob** @Rob99424749 · 3h ⌄

Countdown to @skotthemarketer virtue signaling
while continuing to cyberstalk his ex gfs.
#InternationalWomensDay ♀ #metoo ⚦ #SanJose
#DigitalMarketing

   👤 **Rob** @Rob99424749 · Mar 7

   I wonder why @skotthemarketer always has
   troubles with women...especially those who
   support #metoo ⚦

   #cyberstalking #timesup #SanJose
   #InternationalWomensDay ♀

   💬       ⟲       ♡       ⬆



← **Tweet**

**Rob**
@Rob99424749

Im shocked by the irony... imagine working or hiring a serial stalker and rapist. #Epstein and @skotthemarketer would be on the same ring of hell... #timesup #MeToo 🤚 #EqualityCantWait 🎤 #believewomen #blueliesmatter #narcissistic abuse @tapclicks @BoathouseCap @NinjaCatPPC

## ← **Tweet**

 **Rob**
@Rob99424749 ⌄

Sad that @tapclicks @tapanalytics @RavenTools @BoathouseCap haven't caught onto @skotthemarketers hidden crimes. #metoo  #TimesUpPayUp #stalker #domesticabuse #DigitalMarketing twitter.com/Rob99424749/st...

This Tweet is unavailable.

12:34 AM · Sep 19, 2019 · Twitter Web App

**1** Like





**Rob1987** @Rob19874 · Jul 7

@TapClicks why didn't you take a stand on this?
Hiring a serial stalker.....#shameful
twitter.com/Rob19874/statu...

This Tweet is unavailable.

💬          ⟲          ♡ 1          ⬆

 **Rob** @Rob99424749 · 2h ⌄

Hilarious that this #victim cries on @youtube videos then represents his company in a #libel campaign... I hope he realizes that it's legal to fire an employee who damages their brand like @tapclicks and @NinjaCatPPC by commiting #rape then #cyberstalking while representing them



This Tweet is unavailable.

 

**Rob**
@Rob99424749

Tweets      **Tweets & replies**      Media      Likes

**Rob** @Rob99424749 · 1h                          ⌄

@LuminaComms hilarious you haven't picked up on the #misogynist @skotthemarketer is. I'm sure your #womxn staff felt something weird with him @darylmcnutt twitter.com/Rob99424749/st...

This Tweet is unavailable.

  ⬭              ⇄              ♡              ⬆













**Rob** @Rob99424749 · 7h

As the man who claims to a) Not be a stalker/felon and b)owner of the proxy accounts goes silent each time he leaves the country, is it any wonder why the evidence always points to him? His ex moved on, why can't he? #timesup ⚖️ #believeallwomen #enddomesticviolence